UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROBERT CLARK et al.,<br><br>Plaintiffs,<br>v.<br><br>SAFECO INSURANCE COMPANY OF AMERICA, and ALLCAT CLAIMS SERVICES, LLC,<br><br>Defendants. | CASE NO. 2:24-cv-01725-DGE<br><br>ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 44, 49) |

Before the Court are Defendants Safeco Insurance Company of America's ("Safeco") and Allcat Claims Services, LLC's ("Allcat") motions for summary judgment. (Dkt. Nos. 44, 49.) For the reasons explained below, Safeco's motion for summary judgment (Dkt. No. 44) is GRANTED in part and DENIED in part. Allcat's motion for summary judgment (Dkt. No. 49) is also GRANTED in part and DENIED in part.

# I BACKGROUND

## A. Plaintiffs' Insurance Claim

On October 30, 2023, Plaintiffs Robert and Louise Clark sustained water damage to their home when an angle valve in the kitchen plumbing suddenly failed. (Dkt. No. 27 at 3.) The water "[c]aused damage to [the] entire kitchen," including the cabinets and countertops, and required reinstallation of "all carpet and pad" in the basement. (Dkt. No. 58-1 at 3.) On the same day, Plaintiffs reported the loss to their insurance company, Safeco. (Dkt. Nos. 45-1 at 80; 58-1 at 8.)

Unbeknownst to Plaintiffs, Safeco's parent company had previously entered into a service agreement with Allcat, in which Allcat was contracted as Safeco's parent company's claims adjuster. (*See* Dkt. No. 63 at 15.) Upon receiving a claims assignment, Allcat was required to perform certain tasks, such as: contact the insured, complete an estimate, create an inspection report, upload claim documentation, issue payments on covered claims within its discretionary authority, send settlement or denial letters, and handle policyholder escalations. (*Id.* at 15–17.) Thus, Allcat employees were handling Plaintiffs' claim throughout the duration of the claims adjusting process.[1] (*See* Dkt. No. 61-16 at 11.)

On November 2, 2023, Paul Davis was assigned to Plaintiffs' claim as Safeco's preferred program vendor. (Dkt. No. 58-1 at 4.) Fire Water Restoration Services was assigned as the mitigation contractor. (*Id.* at 7.) On November 1, 2023, Fire Water requested approval from Safeco "to place a generator to power the equipment while the electrical box is looked at[.]" (*Id.*) The electrical panel was replaced on November 2, and demolition began on November 3,

[1] For the sake of uniformity, the Court will use "Safeco" when discussing the claims handling actions that Allcat took on behalf of Safeco.

2026. (*Id.* at 6–7.) On November 6, 2026, Paul Davis informed the mitigation contractor, Fire Water Restoration that it had discovered mold underneath the affected hardwood flooring that would need removal, and advised that the flooring was continuous throughout the entire main level and "may not be able to be matched." (Dkt. No. 58-1 at 9.) Fire Water responded that it did not yet have authority on the flooring and advised Paul Davis not to proceed with the demolition of the hardwood flooring until authorization was received. (*Id.*)

In a letter dated November 29, 2023, Safeco sent Plaintiffs a partial denial of coverage, stating that there was "no coverage to repair plumbing due to wear, tear, and deterioration," but it would cover "ensuing losses." (Dkt. No. 58-12 at 2.) Thus, Safeco agreed to pay $30,622.13, which comprised of Dwelling payment minus a deductible and past payment for an electrical bid. (Dkt. No. 58-12 at 3.)

**B. Contractor Bids**

On December 15, 2023, Paul Davis submitted an estimate of repairs in the amount of $42,785.55. (Dkt. No. 45-1 at 21, 49.) Between December 2023 and January 2024, there was a breakdown in communications between Plaintiffs and Paul Davis. (*See* Dkt. No. 45-1 at 42–46; 58-1 at 11.) On January 24, 2024, Paul Davis notified Plaintiffs that it was at full capacity and unable to take on the work to repair Plaintiffs' home. (Dkt. No. 45-1 at 42.)

On February 2, 2024, Mrs. Clark informed a Safeco claims adjuster via email that Plaintiffs selected WestRock Construction as their contractor for rebuilding the water damaged areas of their home. (Dkt. No. 58-2 at 2.) Mrs. Clark attached WestRock's rebuild estimate to the email. (*See* Dkt. No. 58-2 at 2–4.) WestRock provided an estimate for $111,206.36. (Dkt. Nos. 45-3 at 2–3; 58-2 at 3–4.) On March 5, 2024, a Safeco representative informed Plaintiffs that the WestRock estimate "cannot be processed" for various reasons, such as lack of

itemization, and requested supporting documentation. (Dkt. No. 58-6 at 2–4.) The email states that "[a] re-inspection was completed, and an estimate is currently scheduled for review and processing." (Dkt. No. 58-6 at 3.) On March 11, 2024, Plaintiffs provided the requested estimate information. (Dkt. No. 58-7 at 2–15; *see also* Dkt. No. 58-8 at 2–5.)

On June 24, 2024, Plaintiffs emailed Safeco an updated estimate from Johnson and Sons Construction, LLC and the detailed itemization. (Dkt. No. 58-4 at 2–38.) Johnson and Sons Construction, LLC provided an estimate of $117,143.46. (Dkt. Nos. 45-3 at 17–23; 58-4 at 2–7.)

Mr. Clark testified that "one of the reasons why we were told that we were not—or Safeco was not willing to accept estimates from either West Rock or Johnson and Sons is because they weren't using a detailed pricing and the format that Safeco uses in their estimates." (Dkt. No. 58-16 at 6.) Therefore, Plaintiffs went with European Restoration. (*Id.*) On June 18, 2024, European Restoration LLC provided Plaintiffs with an estimated repair cost of 123,424.92. (Dkt. Nos. 45-3 at 4–16; 58-5 at 2–14.) On June 26, 2026, Mrs. Clark spoke to a Safeco claims representative, who indicated they had received European Restoration's estimate and submitted it for review. (Dkt. No. 58-1 at 12.) According to Safeco's claim notes, the supplemental adjuster was scheduled to review the European Restoration estimate on July 10, 2024, after which it could take three to five days to complete the review; however, when Mrs. Clark called the claims representative back on July 17, and July 22, the claim was still being reviewed. (*Id.*) Safeco rejected the European Restoration estimate on August 2, 2024. (*Id.* at 20.) According to Safeco's claim notes, on August 14, 2024, Safeco spoke with Mrs. Clark and explained that the "Safeco/Liberty Mutual estimate are the are [sic] repair cost and no additional will be released." (Dkt. No. 58-1 at 21.)

**C. Plaintiffs' Lawsuit and Post-Litigation Payment**

In a letter dated September 30, 2024, counsel for Plaintiff sent Safeco an Insurance Fair Conduct Act ("IFCA") written notice of violation. (Dkt. Nos. 45-6; 58-11.) Plaintiffs then filed this lawsuit on October 22, 2024. (Dkt. No. 1.) In their second amended complaint, they brought a breach of contract claim against Safeco and four state statutory claims against both Defendants: violation of the insurer's duty of good faith, Washington Revised Code § 48.01.030; negligent claims handling; violation of the Washington Consumer Protection Act ("CPA"), Washington Revised Code § 19.86; and violation of IFCA, Washington Revised Code § 48.30.015. (Dkt. No. 27 at 9–12.)

Counsel for Safeco responded to the IFCA letter on October 30, 2024, and agreed "to resolve the basis for [Plaintiffs'] cause of action pursuant to IFCA." (Dkt. No. 45-6 at 6.) Thus, Safeco issued payment under Dwelling coverage (using the European Restoration estimate), as well as a supplemental Additional Living Expense ("ALE") payment. (Dkt. No. 45-6 at 5–6.) In a letter dated May 15, 2025, Safeco, after reviewing Plaintiffs' claim, determined that Plaintiffs were owed a supplemental payment. (Dkt. No. 58-13 at 2.) Safeco paid the European Restoration estimate, as well as an electricity estimate and mitigation costs, minus recoverable depreciation; debris removal costs paid when incurred; Plaintiffs' deductible; and Safeco's prior payments. (*Id.*)

On July 7, 2026, Safeco and Allcat each filed a motion for summary judgment on all claims. (*See* Dkt. Nos. 44, 49.)

## II LEGAL STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—in most civil cases, a preponderance of the evidence. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv. Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. However, the court need not, and will not, "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also White v. McDonnell-Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (the court need not "speculate on which portion of the record the nonmoving party relies, nor is it obliged to wade through and search the entire record for some specific facts that might support the nonmoving party's claim"). The opposing party must present significant and probative

evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). Uncorroborated allegations and "self-serving testimony" will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. V. Pac Elec. Contractors Ass'n*, 809 F. 2d 626, 630 (9th Cir. 1987).

## III DISCUSSION

### A. Breach of Contract against Safeco

Safeco argues it did not breach its contract with Plaintiffs because it paid what it owed under the insurance policy. (Dkt. No. 44 at 10.) Plaintiffs respond that Safeco's actions were not reasonable and therefore it breached their insurance contract by "not paying the benefits owed to [Plaintiffs] in exchange for the premiums they faithfully paid year after year." (Dkt. No. 57 at 9–10.)

Washington courts construe insurance policies as contracts. *Kut Suen Lui v. Essex Ins. Co.*, 375 P.3d 596, 599 (Wash. 2016) (en banc). When interpreting an insurance policy, courts "consider the policy as a whole" and give the policy "'a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.'" *Id.* (citations omitted). To establish breach of contract, Plaintiffs must demonstrate: (1) the existence of a valid contract; (2) breach of that contract; and (3) resulting damages. *Gochev v. First Am. Prop. and Cas. Ins. Co.*, 695 F. Supp. 3d 1255, 1262 (W.D. Wash. 2023).

Here, there is no dispute that a valid contract existed between the parties. There is, however, a genuine issue of material fact as to whether Safeco breached that contract. Under the contract, the policy provides that Safeco "will pay claims and provide coverage as described in

this policy if you pay the premiums when due and comply with all applicable provisions outlined in this policy." (Dkt. No. 57 at 10.)

After Paul Davis declined to perform the repairs on Plaintiffs' home, Plaintiffs obtained an estimate from WestRock Construction in the amount of $111,206.36—significantly more than the amount Safeco previously approved for repairs. (Dkt. Nos. 45-3 at 2–3; 58-2 at 3–4.) Because Safeco would not accept WestRock Construction's estimate in the format provided, Plaintiffs obtained two additional estimates. (Dkt. Nos. 45-3 at 4–23; 58-4 at 2–7; 58-5 at 2–14.) The final estimate, prepared by European Restoration, was submitted in a format accepted by Safeco. Notably, all three estimated exceeded $100,000.

Viewing the evidence in the light most favorable to Plaintiffs, the Court concludes a genuine dispute of material fact exists as to whether Safeco failed to pay the claim and provide coverage as required under the policy. Despite receiving multiple estimates demonstrating that the cost to repair Plaintiffs' home substantially exceeded the amount previously approved, Safeco informed Plaintiffs on August 14, 2024, that it would offer no additional payment for their loss. (Dkt. No. 58-1 at 21.) As a result, the amount Safeco agreed to pay was roughly $50,000 less than the estimated cost to repair Plaintiffs' home. The substantial disparity between the amount Safeco agreed to pay and the documented estimated cost of repairs creates a genuine issue of material fact as to whether Safeco failed to pay the claims and provide coverage as required under the policy, thereby breaching the contract. *See Morella v. Safeco Ins. Co. of Illinois*, No. C12-0672RSL, 2013 WL 1562032, at *3 (W.D. Wash. Apr. 12, 2013) (acknowledging that "benefits promised in the policy are effectively denied" where amount offered to pay is "not in line with the losses claimed").

Safeco cannot avoid a potential finding of breach simply by paying the disputed amount *after* Plaintiffs filed suit and then asserting that no breach occurred. The relevant question is whether Safeco breached the contract when they declined to pay the amount reflected in the European Restoration estimate submitted to them or any additional amount than previously approved. Safeco's subsequent payment does not eliminate the factual dispute concerning their prior conduct or establish, as a matter of law, that no breach occurred.

Despite a genuine issue of material fact as to whether a breach occurred, Plaintiffs must still establish damages. In an insurance breach of contract action, an insured may only recover damages up to the policy limits. *Polygon N.W. Co. v. Am. Nat'l Fire Ins. Co.*, 189 P.3d 777, 789 (Wash. Ct. App. 2008) ("Washington law does not, in fact, force insurers to pay for losses that they have not contracted to insure."). Where an insurer is found liable for a breach of the insurance contract, the maximum liability for damages is therefore limited to the policy limits. *Kabrich v. Allstate Prop. & Cas. Ins. Co.*, Case No. CV-12-3052-LRS, 2014 WL 3925493, at *7-8 (E.D. Wash. Aug. 12, 2014), *aff'd*, 693 F. App'x 524 (9th Cir. 2017); *Woo v. Fireman's Fund Ins. Co.*, 208 P.3d 557, 563 (Wash. Ct. App. 2009) ("The general rule regarding damages for an insurer's breach of contract is that the insured must be put in as good a position as he or she would have been had the contract not been breached.").

Plaintiffs do not allege in their opposition that Safeco failed to pay what was owed under the policy. (*See* Dkt. No. 57 at 10–11.) After receiving the IFCA notice letter, Safeco paid Plaintiffs a total of $40,445.40, which includes $34,941.03 for dwelling coverage based on the July 25, 2024 estimate submitted by Plaintiffs, and $5,504.37 in ALE benefits. (Dkt. No. 45-6 at 5–6.) Furthermore, in May 2025, Safeco paid additional supplemental payments, which included the European Restoration estimate. (Dkt. No. 58-13 at 2.) Plaintiffs and their expert do not

dispute Plaintiffs received the amount claimed. (*See* Dkt. Nos. 45-2 at 9; 45-4 at 6 ("I know that the amount claims has been paid.").)

Although Plaintiffs have presented sufficient evidence to raise a genuine issue of material fact as to whether Safeco breached the contract, Plaintiffs do not dispute that they have ultimately received all payments owed to them. Thus, Plaintiffs have not identified any unpaid amounts resulting from the alleged breach and cannot establish damages. Therefore, Safeco's motion for summary judgment as to Plaintiffs' breach of contract claim is GRANTED.

**B. *Olympic Steamship* Fees**

Plaintiffs also seek attorney fees against Safeco under *Olympic Steamship Co. v. Centennial Insurance Co.*, 811 P.2d 673 (Wash. 1991). (Dkt. No. 27 at 9.) Safeco moves for summary judgment on this issue. (Dkt. No. 44 at 12–13.)

In Washington, "an award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract, regardless of whether the insurer's duty to defend is at issue." *Olympic Steamship*, 811 P.2d at 681. "[T]he rule articulated in *Olympic Steamship* is applicable where the insurer forces the insured to litigate questions of coverage[.]" *McGreevy v. Oregon Mut. Ins. Co.*, 904 P.2d 731, 734 n.4 (Wash. 1995). "'Coverage means the assumption of risk of occurrence of the event insured against before its occurrence.'" *Kroeger v. First Nat. Ins. Co. of Am.*, 908 P.2d 371, 373 (Wash. Ct. App. 1995) (quoting *Ryan v. Cuna Mut. Ins. Soc'y*, 529 P.2d 7, 9 (Wash. 1974)). "Coverage disputes include both cases in which the issue of any coverage is disputed and cases in which 'the extent of the benefit provided by an insurance contract' is at issue." *Leingang v. Pierce Cnty. Med. Bureau, Inc.*, 930 P.2d 288, 296 (Wash. 1997) (quoting *McGreevy*, 904 P.2d at 735).

On the other hand, "dispute[s] over the value of the claim presented under the policy . . . are not properly governed by the rule in *Olympic Steamship*." *Dayton v. Farmers Ins. Grp.*, 876 P.2d 896, 898 (Wash. 1994). "Where the insurer admits coverage but, in good faith, denies or disputes the value of the claim, [*Olympic Steamship*] does not authorize fees." *Solnicka v. Safeco Ins. Co. of Ill.*, 969 P.2d 124, 126 (Wash. Ct. App. 1999).

> Often, however, there is a fine line between a coverage dispute and a claim dispute. The insurer may admit some coverage, but dispute the scope of coverage and then contend the case involves a claim dispute. Coverage disputes include cases in which coverage is denied and those in which the extent of the benefit is disputed. Coverage questions focus on such questions as whether there is a contractual duty to pay, who is insured, the type of risk insured against, or whether an insurance contract exists at all.
>
> Claim disputes, on the other hand, raise factual questions about the extent of the insured's damages. They involve factual questions of liability, injuries, and damages and are therefore appropriate for arbitration.

*Id.* (citations omitted); *see also Axess Int'l Ltd. v. Intercargo Ins. Co.*, 30 P.3d 1, 5 (Wash. Ct. App. 2001) ("Fees are awarded under *Olympic Steamship* where the insurer unsuccessfully denies coverage, not where the insurer acknowledges coverage but disputes the value of the claim.").

In cases involving IFCA claims, courts have stated that "[w]here the insurer pays or offers to pay a paltry amount that is not in line with the losses claimed, is not based on a reasoned evaluation of the facts . . . and would not compensate the insured for the loss at issue, the benefits promised in the policy are effectively denied." *Morella*, 2013 WL 1562032, at *3; *Jin v. GEICO Advantage Ins. Co.*, 700 F. Supp. 3d 988, 992 (W.D. Wash. 2023) ("accepting a claim and paying or offering to pay *any* amount is not enough to escape liability"); *Heide v. State Farm Mut. Auto. Ins. Co.*, 261 F. Supp. 3d 1104, 1107 (W.D. Wash. 2017) (the "'payment of benefits' prong of IFCA covers scenarios where an insurer makes an unreasonably low offer");

*Langley v. GEICO Gen. Ins. Co.*, 89 F. Supp. 3d 1083, 1092 (E.D. Wash. 2015) (finding that *Morella* "provides a persuasive interpretation of how to evaluate a claim for a denial of payment of benefits when an offer is made but the value is disputed"). In contrast, if an insurer makes "a reasonable payment based on the known facts or is making a good faith effort to appropriately value the loss, the fact that the insured did not immediately get all of the benefits to which it may ultimately be entitled does not establish an "unreasonable denial of payment of benefits." *Morella,* 2013 WL 1562032, at *3.

Here, Safeco's offer to pay only a fraction of the amount necessary to repair the covered damage could reasonably be interpreted as an effective denial of the payment of benefits. Although Safeco characterizes the issue as a dispute over the value of the claim, a reasonable juror could find that the practical effect of their August 14, 2024 decision was to deny Plaintiffs the coverage or payment of benefits they sought under the policy. This factual dispute precludes summary judgment on Plaintiffs request for attorney fees under *Olympic Steamship*. If the jury determines that Safeco breached the policy by failing to provide the coverage or payment of benefits required under the contract, Plaintiffs may establish they were required to bring this action to obtain the benefit of their insurance contract. Safeco's subsequent decision to pay the disputed amount *after* Plaintiffs filed suit does not resolve the potential denial of coverage for purposes of determining an award of fees under *Olympic Steamship*. Accordingly, Plaintiffs' request for attorney fees under *Olympic Steamship* remains a live claim.

**C. Bad Faith**[2]

1. Plaintiffs' claim against Allcat is not foreclosed

As an initial matter, Allcat, relying on *Keodalah v. Allstate Insurance Company*, 449 P.3d 1040 (Wash. 2019), argues that Plaintiffs' bad faith claim against it fails because the duty runs only from the *insurer* to the insured. (Dkt. No. 49 at 7.)

However, as the dissenting opinion in that case points out, *Keodalah* addressed only statutory bad faith claims. *See id.* at 1050–1051 (Yu, J., dissenting) (noting that "the tort of insurance bad faith 'derives from statutory and regulatory provisions, and the *common law*.'" (quoting *St. Paul Fire & Marine Ins. Co v. Onvia, Inc.*, 196 P.3d 664, 667 (Wash. 2008) (emphasis added))). Washington insurance law contemplates two different kinds of bad faith: common-law bad faith and statutory bad faith. *See St. Paul Fire,* 196 P.3d at 667 ("Washington's insurance bad faith law derives from statutory and regulatory provisions, and the common law."). But "[a]lthough the duty to act in good faith is memorialized by [Washington Revised Code § ] 48.01.030, insurance bad faith is a common law tort, not a statutory cause of action." *P.E.L. v. Premera Blue Cross*, 540 P.3d 105, 124 (Wash. 2023). Washington courts have located insurance law's common-law duty of good faith in "the fiduciary relationship existing between the insurer and insured." *Tank v. State Farm Fire & Cas. Ins. Co.*, 715 P.2d

[2] While Plaintiffs' complaint appears to allege separate causes of action for negligent claims handling and bad faith (*see* Dkt. No. 27 at 10), these claims arise out of the same conduct, are not distinguishable, and are analyzed applying the same principles of any other tort. Therefore, the Court considers them as a single cause of action. *See Beasley v. State Farm Mut. Auto. Ins. Co.*, No. 2:13-cv-01106-RSL, 2014 WL 1494030, at *7 (W.D. Wash. Apr. 16, 2014); (*see also* Dkt. No. 44 at 16) ("a claim for negligence is a separate but similar cause of action as an insurance bad faith claim). While the Court acknowledges that "a party may fail to use ordinary care yet still not act in bad faith," *First State Insurance Co. v. Kemper National Insurance Co.,* 971 P.2d 953, 959 (Wash. Ct. App. 1999), because the Court concludes there is a question regarding bad faith, so too is there a question regarding negligence.

1133, 1136 (Wash. 1985). This fiduciary relationship "exists not only as a result of the contract between insurer and insured, but because of the high stakes involved for both parties to an insurance contract and the elevated level of trust underlying insureds' dependence on their insurers." *Id.*

Here, Plaintiffs seek to hold Allcat "liable for common-law bad faith[.]" (Dkt. No. 60 at 17.) Allcat also fails to consider relevant federal authorities interpreting *Keodalah*. In recent years, this District has had ample opportunity to specifically determine whether the Washington Supreme Court in *Keodalah* closed the door on common law bad faith insurance claims against individual insurance adjusters. The overwhelming consensus is that it has not. Courts in this District have repeatedly found that *Keodalah* left open opportunities for consumers to pursue personal liability against insurance adjusters who have acted in bad faith under a common law theory. *See Li v. Am. Fam. Ins. Co.*, Case No. 2:25-cv-01249-TL (W.D. Wash. July 18, 2026), Dkt. No. 31 at 11–12; *Lee v. Amica Mut. Ins. Co.*, Case No. 2:24-CV-00591-TL, 2024 WL 3293353, at *3 (W.D. Wash. July 3, 2024); *DeWoody v. Progressive Direct Ins. Co.*, Case No. C23-1416, 2024 WL 639228, at *3 (W.D. Wash. Feb. 15, 2024) (joining "other courts in this District in concluding that Washington law does not, at this time, bar common law bad faith insurance claims against employee adjusters") (internal citations omitted); *accord Hoglund v. Allstate Ins. Co.*, Case No. C23-1575, 2023 WL 8528495, at *4 (W.D. Wash. Dec. 8, 2023); *Wailes v. Allstate Ins. Co.*, Case No. C23-1651, 2023 WL 8188785, at *1 (W.D. Wash. Nov. 27, 2023); *Xu v. Weis*, Case No. C22-118, 2023 WL 2142683, at *5 (W.D. Wash. Feb. 21, 2023); *Woelfle v. Am. Fam. Connect Prop.*, Case No. C21-1073, 2021 WL 4709901, at *1 (W.D. Wash. Oct. 8, 2021).

Thus, Plaintiffs can, as a matter of law, bring a common law bad faith claim against Allcat.

2. <u>There is a question of fact as to whether Defendants engaged in bad faith</u>

A plaintiff bringing a bad faith tort claim must show "the insurer's breach of the insurance contract was unreasonable, frivolous, or unfounded." *Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1277 (Wash. 2003). As with any other tort claim, the plaintiff must also "prove duty, breach of duty, and damages proximately caused by any breach of duty." *Werlinger v. Clarendon Nat. Ins. Co.*, 120 P.3d 593, 595 (Wash. Ct. App. 2005). "Whether an insurer acted in bad faith is a question of fact." *Smith*, 78 P.3d at 1277. Relevant here, "an insurance company can be held liable for bad faith and unreasonable conduct in the investigation and denial of a claim even where it ultimately turns out that there was no coverage." *Wall v. County Mut. Ins. Co.*, 319 F. Supp. 3d 1227, 1233 (W.D. Wash. 2018); *see also Coventry Assoc. v. Am. States Ins. Co.,* 961 P.2d 933, 934 (Wash. 1998) (en banc) (the issue presented is whether a bad faith claim may be premised on a bad faith investigation, even if "the denial of coverage was ultimately determined to be correct[]").

At the summary judgment stage, courts review bad faith claims under the following standard:

> If the insured claims that the insurer denied coverage unreasonably in bad faith, then the insured must come forward with evidence that the insurer acted unreasonably. The policyholder has the burden of proof. The insurer is entitled to summary judgment if reasonable minds could not differ that its denial of coverage was based upon reasonable grounds. If, however, reasonable minds could differ that the insurer's conduct was reasonable, or if there are material issues of fact with respect to the reasonableness of the insurer's action, then summary judgment is not appropriate. If the insurer can point to a reasonable basis for its action, this reasonable basis is significant evidence that it did not act in bad faith and may even establish that reasonable minds could not differ that its denial of coverage was justified.

*Or. Mut. Ins. Co. v. Seattle Collision Ctr., Inc.,* Case No. C08–1670JLR, 2009 WL 3067036, at *9 (W.D. Wash. Sept. 18, 2009) (quoting *Smith*, 78 P.3d at 1277–1278 (internal citations omitted)).

"A claim of bad faith cannot succeed when the insurer 'acts honestly, bases its decision on adequate information, and does not overemphasize its own interest.'" *Beasley*, 2014 WL 1494030, at *7 (quoting *Werlinger v. Clarendon Nat. Ins. Co.*, 120 P.3d 593, 595 (Wash. Ct. App. 2005)). A bad faith claim cannot succeed without proof of harm. *Id.* "Because bad faith is a question of fact, '[a]n insurer is therefore entitled to a dismissal on summary judgment if, after viewing the facts in the insured's favor, a reasonable person could only conclude that its actions were reasonable.'" *Id.* (quoting *Werlinger*, 120 P.3d at 595); *see also Integon Preferred Ins. Co. v. Wilcox*, No. 2:21-cv-1501, 2023 WL 4978078, at *4 (W.D. Wash. Aug. 3, 2023) ("Typically, whether an insured acted in bad faith is a question of fact for the jury; however, the insurer is entitled to summary judgment if there are not disputed facts pertaining to the reasonableness of the insurer's conduct under the circumstances."). Summary judgment is also appropriate in instances where a reasonable person could only conclude the insured was not harmed. *Id.*

The sole question before the Court is whether Plaintiffs have created a material question of fact as to whether Defendants acted in bad faith when they denied the three contractor estimates Plaintiffs provided them. Viewed in favor of Plaintiffs, the evidence shows that there was a breakdown in communication between Plaintiffs and Safeco's preferred contractor, requiring Plaintiffs to seek an alternative contractor to begin work on their kitchen. Upon learning they could not move forward with Paul Davis, Plaintiffs obtained estimates from three different contractors which, according to Plaintiffs' expert, were denied without any explanation. (Dkt. No. 58-15 at 6–7.) It was only after Plaintiffs sent an IFCA notice to Safeco that Safeco

paid their contractor's estimate. The Court disagrees with Safeco that there is uncontroverted evidence that Defendants' actions related to the claims handling does not amount to bad faith, as reasonable minds could differ on whether denying contractor estimates seemingly without explanation was reasonable.

Safeco argues that "a legitimate investigation forecloses bad faith as a matter of law." (Dkt. No. 66 at 5.) But *Smith* counsels that in Washington, a policyholder is not required to prove bad faith as a matter of law in order to overcome the insurer's motion for summary judgment on a bad faith claim. 78 P.3d at 1277. This would create a "special burden for policyholders" or a "special standard[] of summary judgment to benefit insurers accused of bad faith." *Id.* Looking at the facts in the light most favorable to Plaintiff, the Court concludes a reasonable jury could find that Defendants did not act reasonably in denying three independent contractors estimates which caused Plaintiffs to live outside of their home for over a year. Defendants' motions for summary judgment are accordingly DENIED as to Plaintiffs' bad faith claim.

**D. CPA**

A CPA action requires "(1) an unfair or deceptive practice, (2) in trade or commerce, (3) that impacts the public interest, (4) which causes injury to the party in his business or property, and (5) which injury is causally linked to the unfair or deceptive act." *Anderson v. State Farm Mut. Ins. Co.*, 2 P.3d 1029, 1033 (Wash. Ct. App. 2000) (citing *Indus. Indem. Co. of the Nw., Inc. v. Kallevig*, 792 P.2d 520, 528 (Wash. 1990) (en banc)). There are two types of CPA claims: *per se* and non *per se*. A *per se* claim "exists where the legislature declares that a statutory violation constitutes an unfair or deceptive act." *Preston v. SB&C, Ltd.*, 588 P.3d 371, 375 (Wash. 2026). "An insured may invoke the *per se* CPA claim against an insurer" if the

insurer violates Washington Revised Code § 48.30.010 or the provisions of Washington Administrative Code § 284-30-330.[3] *Oregon Mut.*, 2009 WL 3067036, at *11 (citing *Kallevig*, 792 P.2d at 530); *see also Perez-Crisantos v. State Farm Fire & Cas. Co.*, 389 P.3d 476, 483 (Wash. 2017) (en banc) ("[a] CPA claim can be predicated on a violation of" § 284-30-330). "The first two elements of a CPA claim are established where a statute declares that a violation is a *per se* unfair trade practice." *Keodalah*, 449 P.3d at 1047. A non *per se* CPA claim requires a plaintiff to meet all five elements of a CPA claim.

1. <u>Safeco</u>

Genuine issues of material fact preclude summary judgment on Plaintiffs' CPA claim against Safeco. A violation of Washington Administrative Code § 284-30-330 constitutes a *per se* unfair trade practice, satisfying the first two prongs of the test. *Kallevig*, 792 P.2d at 529; *Keodalah*, 449 P.3d at 1047. As discussed, there is a question of fact as to whether Safeco attempted in good faith to effectuate prompt, fair and equitable settlement of Plaintiffs' claims, fitting within the prohibition in § 284-30-330, which is the "determinative question" in light of all facts and circumstances in the case.[4] *Anderson*, 2 P.3d at 329–330. And the third prong is met because CPA claims "alleging unfair insurance claims practices meet the public interest

---

[3] Washington Administrative Code § 284-30-330 identifies various definitions of "unfair methods of competition and unfair or deceptive acts of the insurer in the business of insurance, specifically applicable to the settlement of claims[.]" It prohibits, among other things, "[f]ailing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies[,]" *id.* § 284-30-330(3); "[r]efusing to pay claims without conducting a reasonable investigation[,]" *id.* § 284-30-330(4); and "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear[,]" *id.* § 284-30-330(6).

[4] Although the Court references only Washington Administrative Code § 284-30-330(6), the Court believes Plaintiffs have raised a genuine issue of material fact as to whether Safeco may have violated the other subsections of § 284-30-330 as referenced in Plaintiffs' responsive brief. (*See* Dkt. No. 57 at 17.)

element because [Washington Revised Code §] 48.30.010 declares that the 'business of insurance is one affected by the public interest.'" *Anderson*, 2 P.3d at 1033 (quoting § 48.30.010); *see also Dees v. Allstate Ins. Co.*, 933 F. Supp. 2d 1299, 1311 n.11 (W.D. Wash. 2013) ("If a plaintiff proves an insurance company acted in bad faith, they also establish the first three prongs of the . . . CPA test.").

Safeco further argues it is entitled to summary judgment on this claim because Plaintiffs cannot establish a cognizable injury. (Dkt. No. 44 at 15–16.) However, "[a]n insured is injured for purposes of the CPA if, 'as a result of [an insurer's] bad faith investigation,' the insured 'hired insurance experts to determine if coverage was denied in bad faith.'" *Hopkins v. Integon Gen. Ins. Co.*, No. 21-35196, 2022 WL 851750, at *1 (9th Cir. Mar. 22, 2022) (quoting *Coventry*, 961 P.2d at 939); *see also Peoples v. United Servs. Auto. Ass'n*, 452 P.3d 1218, 1223–1224 (Wash. 2019) (en banc) (Washington courts recognize "that expenses incurred to investigate a deceptive act or practice are cognizable injuries and damages under the CPA."). The record establishes Plaintiffs incurred certain expenses as a result of Safeco's claims handling. For example, Plaintiffs hired counsel to send Safeco an IFCA notice in September 2024 criticizing Defendant's investigation (Dkt. Nos. 45-6; 58-11) and then initiated this lawsuit in October 2024 (Dkt. No. 1).

The Court concludes that there is sufficient evidence to send Plaintiffs' CPA claim to the jury and to deny summary judgment for Safeco. *See Coventry*, 961 P.2d at 940 ("[Plaintiff] is entitled to make a claim for those amounts and damages nominally associated with bad faith and CPA violations."); *West Beach Condo. v. Commonwealth Ins. Co. of Am.*, 455 P.3d 1193, 1200 (Wash. Ct. App. 2020) (holding that the trial court erred in not allowing the jury to determine

whether the damage at the plaintiff's property was caused by covered perils and if so, whether the defendant unreasonably denied coverage and violated the CPA in doing so).

2. Allcat

Because Allcat is not the insurer, Plaintiffs may only assert a non *per se* CPA claim against Allcat. *Merriman v. Am. Guar. & Liab. Ins. Co.*, 396 P.3d at 368; *Keodalah*, 449 P.3d at 1047. Therefore, Plaintiffs must raise a genuine issue of fact as to whether Allcat engaged in a practice that was nonetheless unfair or deceptive.

To demonstrate a deceptive act, "[the] plaintiff need not show that the act in question was *intended* to deceive, but that the alleged act had the *capacity* to deceive a substantial portion of the public." *Hangman Ridge,* 719 P.2d at 535. An unfair act is established by evidence that it (1) causes or is likely to cause substantial injury, which (2) consumers cannot avoid, and (3) is not "outweighed by countervailing benefits." *Klem v. Wash. Mut. Bank,* 295 P.3d 1179, 1187 (Wash. 2013) (en banc) (quoting 15 U.S.C. § 45(n)).

While Plaintiffs spend most of their briefing arguing that third-party adjusters may be subject to liability for non *per se* CPA violations, they spend almost no briefing demonstrating whether Allcat engaged in an unfair or deceptive act. Plaintiffs, therefore, fail to establish any genuine issues of material fact supporting their CPA claim against Allcat. Accordingly, Plaintiffs' CPA claim against Allcat is DISMISSED on summary judgment.

**E. IFCA Claim Against Safeco**

"IFCA provides a cause of action to a 'first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer[.]'" *Seaway Props., LLC v. Fireman's Fund Ins. Co.*, 16 F. Supp. 3d 1240, 1254 (W.D. Wash. 2014) (quoting Wash. Rev. Code § 48.30.015(1)). IFCA does not "create a [separate] cause of action for

regulatory violations." *Perez-Crisantos*, 389 P.3d at 482; *see also Seaway*, 16 F. Supp. 3d at 1255 ("The right to sue [under IFCA] arises solely from an unreasonable denial of a claim for coverage or payment of benefits."). If the insured shows the insurer unreasonably denied a claim for coverage or unreasonably denied payment of benefits, a claim exists under IFCA, and the court may "'increase the total award of damages to an amount not to exceed three times the actual damages.'" *Ainsworth v. Progressive Cas. Ins. Co.*, 322 P.3d 6, 20 (Wash. Ct. App. 2014) (citing Wash. Rev. Code § 48.30.015(2)). However, violations of the Washington Administrative Code, alone, are insufficient to establish an IFCA violation. *Wall*, 319 F. Supp. 3d at 1234. Rather, "[r]egulatory violations matter only when deciding whether to award attorney fees or enhance damages." *Seaway*, 16 F. Supp. 3d at 1255.

IFCA includes a notice and cure provision for insurers. Under Washington Revised Code § 48.30.015(8)(a), an insured must provide a written 20-day notice to their insurer before filing an IFCA claim. "If the insurer fails to resolve the basis for the action within the [20]-day period after the written notice by the first party claimant, the first party claimant may bring the action without any further notice." Washington Revised Code § 48.30.015(8)(b). The Washington Supreme Court has not answered the question of "whether an IFCA claim can survive after policy limits are paid." *Cohodas v. Cont'l Ins. Co.*, 717 F. Supp. 3d 1008, 1014 (W.D. Wash. 2024).

Washington state courts have not directly answered whether full payment within the notice period prevents IFCA claims from moving forward; and federal district courts are split on whether IFCA's cure provision precludes IFCA claims from advancing where benefits have been paid in full. *See Labeaume v. First Natl. Ins. Co. of Am.*, 591 P.3d 377, 391–392 (Wash. Ct. App. 2026); *Leahy v. State Farm Mut. Auto. Ins. Co.*, 3 Wash. App. 2d 613, 632, 418 P.3d 175

(2018) (allowing an IFCA claim to proceed despite the policy limit being paid); *compare Cohodas*, 717 F. Supp. 3d at 1015-16 (declining to hold that payment of policy limits is a categorical bar to bringing an IFCA claim), and *Reverse Now VII, LLC v. Oregon Mut. Ins. Co.*, No. C16-209-MJP, 2018 WL 646880, at *4 (W.D. Wash. Jan. 30, 2018) (finding that a question of fact for the jury existed as to whether Oregon Mutual unreasonably denied payment of benefits despite having paid all amounts due and owed), and *Gochev v. First Am. Prop. & Cas. Ins. Co.*, 695 F. Supp. 3d 1255, 1267 (W.D. Wash. 2023) (denying summary judgment on the IFCA claim despite the insurer paying policy limits because "'a refusal to pay a demand for coverage reasonably promptly is an unreasonable denial of benefits, even if only temporary'"), *with Young v. Safeco Ins. Co. of Am.*, No. 20-CV-01816-LK, 2022 WL 4017893, at *8 (W.D. Wash. Sept. 2, 2022) (holding that an IFCA claim for denial of payment cannot succeed when the insurer ultimately pays the claimant's full demand), and *Kenco Constr., Inc. v. Hartford Fire Ins. Co.*, No. 2:19-CV-0100-RAJ, 2020 WL 1433738, at *4 (W.D. Wash. Mar. 24, 2020) (holding that an IFCA claim fails where the underlying claim has been paid in full), *and Smith v. State Farm Mut. Auto. Ins. Co.*, No. C12-1505-JCC, 2013 WL 12107577, at *3–4 (W.D. Wash. Jan. 29, 2013) (holding that there was no denial of coverage or payment where Plaintiff was paid the policy limit following trial, and thus, IFCA was inapplicable).

In *Cohodas*, the insured demanded her $1,000,000 policy limit for uninsured motorist coverage ("UIM") coverage. 717 F. Supp. 3d at 1010. The insurer did not immediately respond. *Id.* Eventually, when the insurer finally responded, it was generally uncooperative. *Id.* at 1010-11. The insured sued the insurer and the insurer paid her the $1,000,000 policy limit. *Id.* at 1011. The insured then amended her complaint to include an IFCA claim. *Id.* The insurer moved for summary judgment to dismiss the claim. *Id.* The federal district court acknowledged

confusion about whether an IFCA claim can survive payment of policy limits. *Id.* at 1014–1015. However, given the lack of binding authority and the decision in *Leahy* allowing an IFCA claim despite posttrial payment of the policy limit, the *Cohodas* court declined to prohibit IFCA recovery where the insurer has paid the insured's policy limit. *Id.* Considering the evidence in the light most favorable to the insured, the court could not find that the insurer's failure to pay initially was because of a "good faith dispute" about the value of the insured's claim, so the eventual payment of policy limits was not "a categorical bar to her IFCA claim." *Id.* at 1015–1016. Accordingly, there were genuine issues of material fact about whether the insurer "unreasonably denied coverage or benefits by virtue of its handling of [the insured's] claim, including its delay in payment." *Id.* at 1016. The court thus denied the insurer's motion for summary judgment. *Id.*

In contrast, in *Young*, the federal district court concluded that even where an insurer's conduct was unreasonable, "an IFCA claim for a denial of payment 'cannot survive' when the insurer ultimately pays the claimant's full demand." 2022 WL 4017893, at *8. The district court cited other Washington federal district court cases concluding there was not a valid IFCA claim where the insurer paid the insured's full policy limit. *Id.* at *8.

"The insured must show that the insurer unreasonably denied a claim for coverage *or* that the insurer unreasonably denied payment of benefits." *Perez-Crisantos*, 389 P.3d at 482 (emphasis added) (citing *Ainsworth*, 322 P.3d at 20). "Where the insurer pays or offers to pay a paltry amount that is not in line with the losses claimed, is not based on a reasoned evaluation of the facts (as known or, in some cases, as would have been known had the insurer adequately investigated the claim), and would not compensate the insured for the loss at issue, the benefits promised in the policy are effectively denied." *Morella*, 2013 WL 1562032, at *3. However, if

an insurer makes a reasonable payment based on the known facts or is making a good faith effort to appropriately value the loss, the fact that the insured did not immediately get all of the benefits to which it may ultimately be entitled does not establish an "unreasonable denial of payment of benefits." *See Country Preferred Ins. Co. v. Hurless,* Case No. 2:11-cv-01349-RSM, 2012 WL 2367073 (W.D. Wash. June 21, 2012) (no IFCA claim where insurer paid medical expenses and property damage claims and was attempting to resolve ambiguities in the record regarding wage loss claim when plaintiff demanded arbitration); *Pinney v. Am. Family Mutual Ins. Co.,* Case No. 2:11-cv-00175-MJP, 2012 WL 584961 (W.D. Wash. Feb.22, 2012) (no IFCA claim where insurer paid $6,500 in advance while experts appraised damages, which were ultimately established at $8,798.89).

Safeco argues there is no evidence that it "refused to pay any submitted, covered item once the claim was properly documented." (Dkt. No. 44 at 18.) Viewed in Plaintiffs' favor, the claim appears to have been properly documented no later than August 14, 2024, yet Safeco refused to pay all damages and instead offered a substantial amount less than the value of the claim. The Court agrees with *Cohodas*, there is sufficient evidence to create a genuine dispute of material fact as to whether Safeco effectively denied coverage such that its conduct was unreasonable. Thus, summary judgment on Safeco's IFCA claim is DENIED.

## IV CONCLUSION

For the reasons identified herein, Allcat's and Safeco's motions for summary judgment (Dkt. Nos. 44, 49) are both GRANTED in part and DENIED in part as discussed in this Order.

1. Plaintiffs' breach of contract claim against Safeco is DISMISSED on summary judgment.
2. Plaintiffs' CPA claim against Allcat is DISMISSED on summary judgment.

3. Defendants' requests to dismiss all other claims on summary judgment are DENIED.

Dated this 21st day of September, 2026.

David G. Estudillo
United States District Judge